NEW ORLEANS COFFEE COMPANY, LIMITED, v. HENRY F. CADY.

FILED JUNE 18, 1903. No. 12,931.

1. **Peremptory Instruction: COUNTER-CLAIM: EVIDENCE.** It is not error to refuse a peremptory instruction for a verdict for plaintiff, where defendant has introduced evidence tending to support a counter-claim set up in the answer.

2. **Verdict: EVIDENCE.** Evidence sufficient to take a question to the jury, will ordinarily support a verdict upon it.

3. **Agent's Authority: INSTRUCTION.** Not error to submit to jury the question of the extent of a selling agent's authority to accept payment in something besides money, where there is evidence of statements by the principal's general manager tending to show such authority.

4. **Instruction: EVIDENCE.** It is error to submit to a jury the question as to whether goods were purchased from one H., as principal, or from him as agent of plaintiff, where the evidence points only to the latter conclusion.

ERROR to the district court for Douglas county: JACOB FAWCETT, DISTRICT JUDGE. *Reversed.*

*Crane, Crane & Erwin,* for plaintiff in error.

*Montgomery & Hall, contra.*

HASTINGS, C.

Plaintiff brought this action in Douglas county district court, claiming $170.50 on open account for coffee sold and delivered. The defendant denied that plaintiff had sold him any goods; alleged that he bought the goods and merchandise mentioned in plaintiff's petition from one J. L. Hutchinson and paid the latter for them in full; that Hutchinson was authorized to sell the merchandise for plaintiff and receive pay, and that any indebtedness held by plaintiff for the goods is against Hutchinson and not the defendant.

By way of counter-claim, the defendant says he made an oral agreement with Hutchinson, who was acting on

plaintiff's behalf, to sell plaintiff 100 coffee stands or tables at the agreed price of $2.50 each and 100 stands or tables at the agreed price of $1.75 each; that plaintiff failed and refused to carry out the contract to defendant's damage in the sum of $175. Subsequently the counterclaim was amended, setting forth an oral contract for the purchase by plaintiff from defendant of the coffee stands at the prices before stated, but alleging increased damages; that defendant caused one stand of each kind to be manufactured and deliverd to plaintiff, who accepted it upon said contract; that defendant at once made arrangements for the manufacture of the remainder for the purpose of filling said contract, but plaintiff failed and refused to carry out its part of the contract, and refused to accept the stands and canceled the contract to purchase; that if plaintiff had not canceled the contract and had carried it out, defendant would have had a profit of $225 in the sale of the stands. A general denial was filed, for reply.

The jury returned a verdict for defendant. Plaintiff brings error on four grounds. *First:* The giving of instruction seven, to the effect that if the evidence showed that the coffee was bought from Hutchinson, the traveling salesman, as principal, and not from the plaintiff, and that the defendant settled with Hutchinson, there could be no recovery. This is claimed to be error on the ground that there was no evidence to warrant any such instruction; that the jury, under the evidence, could not have been warranted in finding that the coffee was bought from Hutchinson and such finding could not have been sustained, and that no such question should have been submitted. *Second:* The giving of instruction eight, which told the jury that if Hutchinson was plaintiff's agent and Cady knew it, but settled with the agent, and that the latter was authorized to make the settlement, then there could be no recovery. This is claimed to have been error for the same reason, namely, that there was no evidence to warrant it; that there was absolutely nothing in the record tending to show any authority on the part of

Hutchinson to make settlement. *Third:* The refusal of a peremptory instruction to find for the plaintiff. *Fourth:* That the verdict is not sustained by the evidence. This last is on the ground that it was necessary to the finding that the jury conclude that Hutchinson was authorized to make settlement for the goods, and no such authority appears.

All the alleged errors relate simply to the sufficiency of the evidence to warrant the verdict, and, also, to justify the court in submitting to the jury the specific questions as to the party from whom the goods were purchased and his authority, which were left to their determination.

The refusal of the court to instruct for a verdict, which is the first error assigned, was right. There was evidence tending at least in some degree to support a finding for defendant on his counter-claim. That being the case, of course, no peremptory instruction for plaintiff was possible. No request, by itself, for the withdrawal from the jury for the attempted defense of payment to Hutchinson, was made. The first error, therefore, need not be considered further.

The real questions in this case are: (1) Whether or not there was evidence which warranted the court in submitting to the jury the questions as to whether defendant bought the coffee from Hutchinson, and paid him for it, as principal; and, (2) whether or not, if the coffee was understood to have been bought from plaintiff, Hutchinson had authority to take the pay for it in board.

Of course, if there was evidence to warrant the court in expressly submitting these questions, as it did in the seventh and eighth instructions, then it must be held that there is evidence to support the verdict rendered on them.

It is suggested on the one side that the question of the counter-claim is out of the case, and on the other that, allowing the verdict should have been in favor of plaintiff on its account, it must nevertheless be sustained because the counter-claim may have balanced the account. Neither of these contentions can be sustained in the ab-

sence of special findings. We are not able to say whether
the verdict was a finding against both account and counter-
claim, or in favor of both, and that they offset each other.
It results, that if there were material errors in the submis-
sion of either one, the judgment must be reversed. The
error, if there is any, is in the non-applicability to the evi-
dence of these instructions, seven and eight.

The evidence on behalf of the plaintiff consists of in-
voices and shipping receipts for the goods and the testi-
mony of the secretary of the company that no payment had
been received for them. The first invoice of coffee bore
date April 20, 1900, and had written across its face in ink,
"Paid, New Orleans Coffee Co. J. L. H.," without date.
The second invoice, $35.25, bore date May 4, 1900, and had
written across its face in ink, "Paid 5-14-00. New Or-
leans Coffee Co., Hutchinson." The third invoice bore
date May 14, 1900, for $53.75, and written across its face
in lead pencil was, "Wed. 5-25-1900, Paid, J. L. Hutchin-
son." The fourth invoice bore date June 16, 1900, and was
for $36, and across its face was written, in ink, the words
"Paid 6-25-1900, J. L. Hutchinson." All these invoices
bore the corporate name of the coffee company and were
payable in New Orleans or New York funds, in sixty
days, less two per cent. for cash if paid within ten days;
and any invoice not paid at maturity to be subject to
demand draft, with exchange and collection charges. Two
invoices, one for $8.50 and the other $11.25, were invoiced
as delivered from W. L. May & Co.'s stock at Omaha, June
25, 1900. The defendant testified that he was a resident
of Omaha, and, in the year 1900, was conducting the Del-
lone hotel; that Hutchinson engaged board and room;
that the latter said he was handling coffee, but did not, at
that time, state for whom; terms for board were satis-
factory, if he could pay in coffee; this was acceptable to the
defendant, and the coffee was received, the principal part
of it turned over to the defendant by Hutchinson, person-
ally, and a part shipped by the New Orleans Coffee Com-
pany; that the first invoices were shipped from New Or-

leans, and on its arrival payment was receipted for by
Hutchinson, the latter given credit on his bill, and his
receipt written across the face as above indicated. The
second, third and fourth invoices were settled for in the
same way; the invoices were received pursuant to orders
given to Hutchinson on these terms. Defendant stated that
sometime during the spring the plaintiff's manager, Jones,
visited Omaha and had a conversation with the defendant,
in which the manager stated, "Mr. Hutchinson represented
them, and whatever arrangements Mr. Hutchinson made
would be carried out by the company." Defendant also
stated that he had arranged with Hutchinson to manufac-
ture coffee stands, for the display of coffee in cans, which
would be placed in various stores; that he had an oral ar-
rangement with Mr. Jones, whereby he was to make 100
stands of a large size, at $2.50 each, and 100 of a smaller
size, at $1.75 each; that this conversation was in presence
of his nephew and of Mr. Cole, in the Dellone hotel; that
one, each, of these stands was made and delivered to the
plaintiff; that material was procured for the rest; that
they were not made because the order was canceled by
plaintiff; defendant stated that the larger stands would
cost him $1.50, each, to make and the smaller one $1, each;
two drafts, one for $150 and one for $100, received by de-
fendant, for board, drawn by Hutchinson on the plaintiff
and paid through the banks, were presented in evidence.

Henry C. Cole, a carpenter, testified to the making of
two of these stands and to hearing the conversation be-
tween the defendant and the manager, Jones; that Mr.
Jones, after examining the stands, or during the examina-
tion, said, "Whatever Mr. Hutchinson agreed upon, why he
was responsible or whatever you may call it." Witness
again stated, generally, in reference to the manager's rep-
resentations with regard to Hutchinson's authority,
"Whatever he said was all right or some such way, as that
he represented the New Orleans Coffee Company." The
manager, Jones, says that Hutchinson was a traveling
salesman, in the service from about February 1 to June 29,

1900; that his authority was to take orders, and he had no authority whatever to make collections, except in one or two cases where he had been specially authorized; Mr. Jones stated that he himself employed and authorized salesmen and collectors; that no other person had authority to do so, and that he had given no such general authority to Hutchinson.   Sixty days after the shipments of the invoices, drafts were drawn on defendant, from New Orleans, payment of which were refused.   Mr. Jones stated that the arrangement with Hutchinson was, that his expenses were to be advanced in cash and he had no authority whatever to contract hotel bills on the credit of the coffee company.   With reference to the counter-claim, Mr. Jones testifies to being in Omaha, in May, and giving a conditional order to the Omaha Box Company, through Mr. Cady, for a few coffee stands, but subject to one of them being sent to New Orleans for trial, before anything further was done; this order the Omaha Box Company acknowledged by letter to New Orleans, June 27, 1900, and they requested confirmation of the order by letter and they would proceed with the work; this letter was received June 30, and on the same day a reply was sent, stating that Hutchinson had been discharged, and the company had his letter stating that a sample stand had been shipped, but nothing further was done; and on receipt of the stand further arrangements would be made and, in the meantime, nothing further was done; the witness testified that the stand was never received and nothing further was ever said in reference to them; that the receipt of the sample stand was a condition precedent, which had not been fulfilled.

Hutchinson testifies by deposition, from Philadelphia, that he sold Cady the coffee; that he knew it was delivered, and that credit was given to himself of the amount, on board due; that this transaction was upon the refusal of payment of drafts, drawn in defendant's favor, for board.

Oliver Irwin, attorney for plaintiff, testified to two conversations with the defendant; the first, calling his atten-

tion to the claim of the plaintiff, and defendant then said, let the matter rest a while, he was in correspondence with Hutchinson and that it would be fixed up. At another conversation defendant said that he had just received $60 from Hutchinson, in the shape of a shipment of cigars, and expected to get the whole $170. Hutchinson, in his deposition, had testified that he had received no special instructions from the house, as to Cady's bill charged against the account for coffee, but that he had general authority.

It seems clear that, under the evidence, the extent of Hutchinson's authority was properly left to the jury, by the eighth instruction. The question as to whether or not the purchase of the coffee was from plaintiff or from Hutchinson, as principal, is not so clear. It is true that Mr. Cady testifies to an arrangement, in February, that Hutchinson should pay his board in coffee, and that, at that time, defendant did not know for whom the coffee was sold. He does not say, however, that he did not know, in April, when the first of this coffee came. In fact he must have known then, for he received the invoices showing himself, and not Hutchinson, as consignee, and billing the goods to himself, and not to Hutchinson, under ordinary selling terms, directly from the New Orleans concern.

Three of these six invoices of coffee were delivered in June. In May, plaintiff's manager, Jones, visited Omaha, and the relations between Hutchinson and the plaintiff were expressly discussed. The transactions were had on which defendant's counter-claim was based.

We are constrained to think that Mr. Cady's testimony, that he had no knowledge as to Hutchinson's representing the plaintiff, when the arrangement for board, and for payment in coffee, was made, is not sufficient to warrant, in the face of the other facts, any finding that when he got and settled for this coffee, he bought it of Hutchinson and paid him for it, as principal. We do not think that the evidence warranted the submission of such a question to the jury.

For error in giving instruction seven, submitting this

question to the jury, it is recommended that the judgment of the district court be reversed and the cause remanded.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.